ANTHONY COLABUFALO vs. PUBLIC BUILDINGS COMMISSIONER OF NEWTON & others.

Middlesex.    May 4, 1955. — June 29, 1955.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Zoning.    Mandamus.*

A finding by the trial judge in a mandamus proceeding, that, in a "private residence [zoning] district" of a city, a nonconforming use of an area surrounded by dwellings as a "construction yard," workshop and office headquarters in connection with a construction business had not been established prior to the effective date of the zoning ordinance, was not shown to be plainly wrong by a report of conflicting oral evidence.   [751]

A judgment in a mandamus proceeding ordering the public buildings commissioner of a city "to enforce the provisions of . . . [a specified section] of the zoning ordinance" with respect to a parcel of land located in a "private residence" district but used as a "construction yard," workshop and office headquarters in connection with a construction business in clear violation of the ordinance was not too broad to be enforceable.   [751–752]

In a mandamus proceeding to compel the public buildings commissioner of a city to enforce its zoning ordinance with respect to a certain parcel of land in a residence district, where a clear violation of the ordinance through use of such parcel for the purposes of a construction business appeared, there was no merit in a contention that as a matter of discretion the writ ought not to issue.   [752]

PETITION for a writ of mandamus, filed in the Superior Court on November 9, 1953.

The case was heard by *Kirk, J.*

*John D. O'Reilly, Jr.,* (*James H. Dixon* with him,) for the respondents DiCarlo Bros. Inc. and another.

*John J. Grady,* for the petitioner.

SPALDING, J.    This petition for a writ of mandamus is brought by an owner of residential property in Newton to compel the public buildings commissioner, hereinafter called the commissioner, to enforce the city's zoning ordinance with respect to certain property which adjoins the peti-

tioner's land. On motion of the commissioner, DiCarlo Bros., Inc., and Lasell Realty Company were ordered to appear and answer and stand as the real parties respondent. G. L. (Ter. Ed.) c. 249, § 5, as amended. The commissioner thereafter did not actively participate in the defence of the case but it was stipulated that any agreements made by the other parties, as well as the findings of the court, would be binding on him. The judge ordered the entry of a final judgment commanding the commissioner to enforce the applicable zoning law with respect to the property. From a judgment entered accordingly, the respondents DiCarlo Bros., Inc., and Lasell Realty Company, hereinafter called the respondents, appealed.

The evidence is reported. Certain facts relating to the applicable ordinances, the ownership of the various parcels involved, and the dates when they were acquired were agreed to. In addition the judge voluntarily made comprehensive findings. He also took a view.

We summarize the pertinent facts as follows: DiCarlo Bros., Inc., is engaged in the construction business. Lasell Realty Company owns a portion of the real estate where the construction company does business. Both are corporations which are owned and controlled by the DiCarlo family, consisting of Emidio DiCarlo and his six sons. DiCarlo Bros., Inc., was organized in 1947. Prior to its formation the construction business to which it succeeded was carried on by the DiCarlo family. Lasell Realty Company came into existence sometime after 1947.

The area with which we are concerned is on the east side of Langley Road in Newton. Langley Road runs generally north and south. Carlisle Street and Beecher Place are roughly parallel to one another and approximately perpendicular to Langley Road. These streets "form a wide 'U,' with Langley Road as the base of the letter." On each of these streets are private dwellings, all of which are neat and well kept. The houses within the "U" are built on a rock ledge. The area in the rear of these houses "may be described as being . . . depressed, or . . . bowl shaped

. . . the rim of which is formed by the ledge upon which the houses are built." In the center there was formerly a pond or marshy area caused by drainage from the surrounding land. Over the years the pond or marsh has been gradually filled in by the joint efforts of most of the abutters, but mainly by the efforts of the DiCarlos, some of whom live on Beecher Place, and others on Langley Road. The bowl shaped area is still substantially below the level of the house lots which surround it. Access to this area is obtained from Hamlet Street which joins Langley Road at a point slightly south of the center of the "U." All of the area within the "U" is in a "private residence district" as defined by § 573 (a) of the Newton zoning ordinance.[1]

The bowl shaped area described above lies within lots A and B and it is these lots which are the subject of this litigation.[2] Lot A was purchased by Frank DiCarlo from the Webster estate in 1943, and lot B was acquired by Lasell Realty Company from one DeAmicus in 1951. In the center of this area there is a two story structure (forty by twenty-six feet), the first floor of which is used as a general work shop for minor repairs and for the storage of small tools, and, occasionally, for sheltering small trucks. On the second floor there are two offices and a drafting room. A cement block extension has been added to the first floor which is used as a pump house. This structure was erected in 1948. The permit to build it was granted by the city of Newton pursuant to an application of Frank DiCarlo who resides on Langley Road. He represented that it was to be a three car garage accessory to his residence. At no time since its

---

[1] This section provides, in part, with exceptions not here material, that "no buildings, structures or lands or parts thereof, shall be used for any purpose other than a dwelling, for not more than two families, a church, or a school not operated for profit, provided that . . . buildings, structures or lands may be used for such accessory purposes as are proper and usual for residences for not more than two families, churches or schools, and are not injurious to the neighborhood as a place for residences for not more than two families; such accessory purposes shall not include a private garage with provisions for more than three automobiles."

[2] The respondents also carry on a portion of their operations on lots E and F, which are south of Hamlet Street, but it was agreed that these lots are not involved in this litigation.

construction has it been used for any purpose other than that described above. Although the structure is on land owned by Frank DiCarlo, it is the office headquarters and work shop of DiCarlo Bros., Inc. It is located three hundred feet from the rear lot line on which Frank's house stands.

The area immediately surrounding this workshop is used as a traffic rotary for the vehicles of DiCarlo Bros., Inc. These, consisting of ten gravel trucks, are habitually parked, when not in use, at the outer edge of the "bowl" nearest the land of abutting owners. Other equipment customarily parked in this area includes bulldozers, tractors, power shovels, a compressor, a welding machine, and similar equipment used in the construction business. In addition there are large stocks of lumber and stone and a huge pile of loam. The area is "aptly described in the petition as a 'construction yard.'" The activities carried on there are clearly visible and audible from all houses near by.

The judge found — and we agree — that the use made of the land in the area was a clear violation of the zoning ordinance unless it could be justified as a nonconforming use which existed prior to the adoption of the ordinance.[1] Thus the question narrows down to whether such a use was established. The judge found that it was not, and we are of opinion that this finding was not plainly wrong. All of the evidence on this issue was oral and much of it was conflicting. The respondents by way of defence pleaded a nonconforming use and had the burden of proof on this issue. See *Murray* v. *Continental Ins. Co.* 313 Mass. 557, 563, and cases cited. The trial judge could find on the evidence that they had not sustained this burden.

The judgment entered below ordered a writ of mandamus to issue commanding the commissioner "to enforce the provisions of § 573 (a) of the zoning ordinance" with respect to lots A and B. The respondents contend that this is too broad to be enforceable. We are of opinion that as applied

___

[1] The zoning ordinance contains the usual provision that it is not applicable to a nonconforming use existing at the time of its adoption. The applicable zoning ordinance has been in effect since December 16, 1935.

to the case at bar the judgment is not too broad. It is plain from the findings of the judge that the respondents are using the building and the land in its immediate vicinity as an adjunct to their construction business, a use obviously not permitted in a "private residence" zone. It is the purpose of the judgment below to put an end to such use. It is true, as the respondents argue, that the ordinance permits buildings to be built and used in such a zone "for such accessory purposes as are proper and usual for residences for not more than two families." But the building on lot A, although ostensibly built for a garage accessory to Frank DiCarlo's residence, is not now being used for anything remotely resembling such accessory purposes. The judge was not obliged to spell out uses in his judgment which the respondents thus far appear never to have exercised and may never exercise. The case seems to have been tried on the broad question whether the present use of the area as a "construction yard" was lawful, and the judgment was directed to that issue. The ordinance sets forth with considerable particularity what may and may not be done in a "private residence" zone and there ought to be no difficulty in enforcing the judgment entered below.

The contention that as a matter of discretion the writ of mandamus ought not to issue in this case is without merit. See *Massachusetts Society of Graduate Physical Therapists, Inc.* v. *Board of Registration in Medicine*, 330 Mass. 601, 605.

*Judgment affirmed.*