ANTHONY COLABUFALO *vs.* PUBLIC BUILDINGS COMMISSIONER OF NEWTON & others.

Middlesex. May 8, 1957. — June 20, 1957.

Present: WILKINS, C.J., RONAN, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Zoning. Mandamus. Equity Jurisdiction,* Zoning. *Moot Question. Equity Pleading and Practice,* Appeal, Contempt proceeding. *Error,* Whether error harmful.

The Superior Court had jurisdiction under G. L. (Ter. Ed.) c. 40A, § 22, inserted by St. 1954, c. 368, § 2, to entertain a "petition for order to show cause" why the respondents, the public buildings commissioner of a city and corporations owning or occupying land, should not be adjudged in contempt for failure to obey a judgment after rescript in a mandamus proceeding, in which the corporations had been joined "as the real parties respondent" and which was actively defended by them, ordering the commissioner "to enforce" specified provisions of the city's zoning ordinance with respect to the corporations' land, and, after the dismissal of the contempt petition as against the commissioner and entry of an order thereon that the corporations comply with the zoning ordinance, to entertain a further petition to adjudge the corporations in contempt of the court "for failing to comply with its orders and decrees." [208–209]

A decree in equity dismissing a contempt petition growing out of and incident to and properly filed in a mandamus proceeding and praying that the respondents in that proceeding be adjudged in contempt of the court for failure to comply with its orders therein was appealable by the petitioner. [209–210]

A decision by the board of aldermen of a city, purporting to grant a zoning "variance" permitting certain corporations to continue business uses of a parcel of land located in a residential district "for six months . . . for purpose of relocating business," in the circumstances was not a zoning variance but was no more than an attempt to extend for six

months the time previously fixed by the Superior Court for compliance by the corporations with an order in a pending mandamus proceeding directing them to comply with the zoning ordinance of the city with respect to that land; and a petition filed in the mandamus proceeding praying that the corporations be adjudged in contempt of the court for failure to comply with its order should not have been dismissed for mootness because of the granting of the purported "variance." [210–211]

PETITION for a writ of mandamus filed in the Superior Court on November 9, 1953.

Proceedings in the Superior Court after rescript following the decision by this court reported in 332 Mass. 748 are described in the opinion. The petitioner appealed from an order by *Sullivan*, J., on December 14, 1955, dismissing a contempt petition. The respondents DiCarlo Bros., Inc., and Lasell Realty Company alleged an exception to the denial by *Paquet*, J., of their motion to dismiss the petitioner's appeal.

*John J. Grady*, for the petitioner.

*John R. Carney, Jr.*, (*James H. Dixon* with him,) for the respondents DiCarlo Bros., Inc., and another.

WHITTEMORE, J. The petitioner has appealed from an order dismissing his petition to adjudge in contempt the respondents DiCarlo Bros., Inc., and Lasell Realty Company (hereinafter called the respondents) on the ground that the question raised by the petition had become moot. The respondents present by bill of exceptions the contention that their motion to dismiss the petitioner's appeal was erroneously denied.

The contempt petition was ancillary to and was filed and docketed in the mandamus proceedings brought by the petitioner in 1953 which resulted in our decision reported as *Colabufalo* v. *Public Buildings Commissioner of Newton*, 332 Mass. 748. The mandamus proceedings determined that the respondents as, respectively, owner of part of, and occupant of, land at Langley Road in Newton could not justify a business use of the subject land in a residence zone as a nonconforming use. Pursuant to our decision, the Superior Court on July 18, 1955, reëntered, after rescript,

its original judgment reading "Writ of Mandamus to issue commanding the respondent commissioner . . . to enforce the provisions of § 573 (a) of the zoning ordinance . . . as to all of the [subject] area . . . ."

The respondents had been joined in the mandamus proceedings on motion of the commissioner "as the real parties respondent," see G. L. (Ter. Ed.) c. 249, § 5, as amended, and took over the active defence of the case under a stipulation that agreements and findings would be binding upon the commissioner, 332 Mass. 748, 749.

The contempt proceedings were initiated by a "petition for order to show cause" why the commissioner and the respondents should not be adjudged in contempt for failure "to obey said judgment." At the hearing on this petition on August 18, 1955, the proceedings as against the commissioner were dismissed by agreement of counsel in open court and the judge ordered as shown by the docket, "After hearing motion to show cause why defendants should not be adjudged in contempt allowed. Decree to be amended to read not before October 1, 1955, so that defendants might comply with the law as outlined by the Supreme Judicial Court." On the same day there was entered a "decree and order," indorsed "Filed by leave of court," which provided "that the respondents, DiCarlo Bros., Inc., and Lasell Realty Company, their officers and agents, be and they are hereby ordered to comply before October 1, 1955, with the zoning ordinances . . . with respect to the premises set forth in the judgment . . . ."

On September 21, 1955, the respondents moved for an extension of the compliance date to November 1, 1955, alleging that they had filed before the aldermen of the city a petition for a "temporary variance" for the subject land for a six months' period "to grant them time to relocate their business." On September 30, 1955, the Superior Court entered a "decree and order" directing compliance with the zoning ordinance on or before November 1, 1955, in the same terms as in the original order, and providing also that "No further extensions of time *for compliance*

*with the said judgment* are to be granted" (emphasis supplied).

On October 28, 1955, there was "filed by leave of court and denied" a motion of the respondents which recited that the board of aldermen on October 17, 1955, had granted the petition for a variance for six months so that "the respondents are not presently violating the zoning ordinances . . ." and praying "that the time for complying with the final decree be extended to April 17, 1956."

On November 10, 1955, the petitioner filed a petition to adjudge the respondents in contempt. It alleged that the "petition for order to show cause why the respondents should not be adjudged in contempt of court for failing to comply with said judgment [after rescript]" had been allowed, recited the intervening proceedings and orders, alleged noncompliance, and prayed that the respondents be adjudged in contempt of the court "for failing to comply with its orders and decrees" and that as punishment the respondents be ordered to pay some amount to the petitioner in view of his expenditures of over $850 to secure compliance.

On December 14, 1955, the Superior Court entered a "finding and order" in which the judge stated as follows: "[O]n October 17, 1955, the board of aldermen . . . duly voted to grant to the respondents herein a variance permitting them to continue in their use of the land. The variance so granted was for a period of six months. In view of the foregoing I find that the question raised by said petition has become moot and therefore the petition for contempt is hereby dismissed."

1. The Superior Court had jurisdiction to entertain the petitions which followed the judgment after rescript and to enter the several orders thereon. General Laws (Ter. Ed.) c. 40A, § 22, inserted by St. 1954, c. 368, § 2, provides, "The superior court shall have jurisdiction in equity to enforce the provisions of this chapter, and any ordinances or by-laws adopted thereunder . . . ." By virtue of the mandamus proceedings the power and obligation of the public buildings commissioner under the ordinance and the cases (*Tran-*

*faglia* v. *Building Commissioner of Winchester,* 306 Mass. 495, 499, and cases cited; *Caires* v. *Building Commissioner of Hingham,* 323 Mass. 589) to enforce the ordinance had been invoked and determined. The principle underlying the cases which hold that affected citizens, initially and without resort to mandamus, may not themselves ask for enforcement was not applicable at this stage of the case. See *O'Brien* v. *Turner,* 255 Mass. 84; *Old Colony Trust Co.* v. *Merchants Enterprises, Inc.* 332 Mass. 484, 488, and cases cited. There was nothing in substance which required the form of a separate bill in equity brought by the commissioner against the respondents to subject them to an enforcing order. Each of the respondents as a "real party" had, pursuant to the statute, G. L. (Ter. Ed.) c. 249, § 5, been a party to the mandamus proceedings. The adjudication was binding on each. Neither made objections to the form of the ancillary proceedings. If the fact that the judgment was not in form addressed to them left open any question of the existence of an outstanding obligation in the respondents to comply with the ordinance to the same extent as the commissioner had been ordered to enforce it, that was fully met by the order of the Superior Court directing their compliance.

2. The appeal was rightly taken and the motion to dismiss it was rightly denied.

Although the petition for contempt filed November 10, 1955, grew out of and was incident to the prior proceedings and was properly filed therein, it was a distinct proceeding. *Root* v. *MacDonald,* 260 Mass. 344, 354–355, 365, and cases cited. The sole question in that proceeding was whether the respondents had complied with the order of September 30, 1955, and the judgment in mandamus. *Hamlin* v. *New York, New Haven & Hartford Railroad,* 170 Mass. 548, 550. The order of December 14, 1955, if rightly based, finally disposed of that proceeding. *Duff* v. *United States Trust Co.* 327 Mass. 17, 21. *Fairbanks* v. *Beard,* 247 Mass. 8. *Parker* v. *United States,* 153 Fed. (2d) 66, 69 (C. C. A. 1). There

may be more than one final decree in a particular case. *Vincent* v. *Plecker*, 319 Mass. 560, 564–565.

It has been determined that an appeal, as in equity, will lie from a final decree on a petition to adjudge in contempt which follows a decree in equity proceedings. *Godard* v. *Babson-Dow Manuf. Co.* 319 Mass. 345, 348. *Cameron* v. *Durkin*, 321 Mass. 590, 596. *Commonwealth* v. *McHugh*, 326 Mass. 249, 275. See *Crystal, petitioner*, 330 Mass. 583, 591. The principle underlying these cases appears applicable here where the enforcing power of the Superior Court in equity has been invoked.

3. The rulings that the board of aldermen had duly granted a variance and that the question raised by the petition for contempt had become moot were in error.

We do not pause to determine whether in contempt proceedings it was open to the judge in the Superior Court to rule that the board of aldermen had no jurisdiction over the granting of a variance. See *Colabufalo* v. *Board of Appeals of Newton*, decided herewith, *post*, page 213. What was produced before him as a reason for not complying with the court orders showed on its face that it was not a variance. Calling it such did not add to its significance. The "variance" which the board purported to grant was no more than an extension for six months of the time for compliance with the judgment and orders of the Superior Court. Such an extension was not within the variance granting power. The evidence below or before the board is not reported but the respondents, as noted, asserted in their motion that the application for a variance had been made "for the purpose of granting respondents time to relocate their business" and the decision purporting to grant the variance (in evidence and before us) reads in part, "Description of use to be made of land if variance is granted: Lot A — variance for six months for use of existing garage, office, and equipment storage for purpose of relocating business. Six-months extension on Lot A only, approved." We think no evidence could have lessened the force of these declarations of the respondents and the board of aldermen

to show the intent and purported effect of the board's action.

The controlling circumstance in law and in fact and underlying the board's decision was the requirement of complying with the judgment in mandamus as it had been made expressly applicable to the respondents. No conditions especially affecting the land but not affecting generally the zoning district whether or not reflected in the evidence which led to the judgment in mandamus could give to the board of aldermen in the guise of the variance power the right to determine when compliance should occur. The condition that the respondents had for some time violated the zoning ordinance is not the kind of condition "especially affecting . . . [the subject] parcel . . . but not affecting generally the zoning district in which it is located" which is contemplated in the statute, G. L. (Ter. Ed.) c. 40A, § 15, inserted by St. 1954, c. 368, § 2. It was a condition that affected the respondents and had led to their being subject to the court's judgment and orders. Such "hardship," if any, as the respondents were subjected to arose from the necessity of complying with court orders. This was not a hardship stemming from "literal enforcement" of the zoning ordinance within the meaning of the statute. The statute does not intend to give relief from court enforcement of the ordinance as it applies to particular land.

It is immaterial, therefore, that the decision recited that it followed the making of general findings of a basis therefor, the recital being in the precise words of the statute.

We do not reach the question whether the judgment barred the respondents from bringing themselves into compliance with the ordinance by applying for and obtaining a true variance, so that after due notice and hearing there would be a determination that all the requirements of the statute and the ordinance had been met but in a way different from that contemplated in our decision.[1] See *Banister*

[1] We have said of the judgment in mandamus (332 Mass. 748, 752), "It is the purpose of the judgment below *to put an end to such [business] use. . . .* The case seems to have been tried on the broad question whether the present *use of the area as a 'construction yard'* was lawful, and *the judgment was di-*

v. *Board of Appeals of East Hampton*, 65 N. Y. Sup. (2d) 15; *Hurley* v. *Board of Public Welfare of Lynn*, 310 Mass. 285.

The order of the Superior Court of September 30, 1955, is perhaps open to the construction that the court intended that the respondents have an additional six months to comply with the judgment if the board of aldermen should purport to grant a "variance" so providing. In any event, upon or after its entry, in view of the underlying motion the obligation of the respondents was not fully clear, and we do not say that a decree declining on this ground an adjudication in contempt would have been in error. An appropriate alternative, however, would have been a clarification of the order and a continuance for compliance. The petitioner was entitled to the exercise of the judge's judgment and discretion in the premises in the light of correct rulings of law, and we cannot say that there was not prejudicial error in the dismissal of the petition solely on the erroneous rulings stated in the order. The petition must stand for further hearing in the Superior Court subject to the effect of relevant intervening developments.[1]

> *Final order dismissing petition to adjudge respondents in contempt reversed.*
>
> *Exceptions of respondents overruled.*

---

*rected to that issue.* The ordinance sets forth with considerable particularity what may and may not be done in a 'private residence' zone and there ought to be no difficulty in enforcing the judgment entered below" (emphasis supplied).

[1] An affidavit filed before us informs us that on April 3, 1957, another petition for order to show cause was filed in the mandamus proceedings in which it is alleged that business use is continuing. It also tells us that by consent an interlocutory decree has been entered on that petition by which the proceedings have been continued pending determination of the appeals in this and another case and that "upon the determination of said cases the parties hereto will abide by said decisions and that no appeal will be taken from any decision thereafter rendered upon the above order of notice to show cause."