## WATSON v. HOKE.

PRIVATE WAY.—The owner of the servient estate in farm lands does not lose the right to use his land for agricultural purposes by taking it subject to a private right of way and consenting to and assisting in laying it out across open lands, but he may enclose the lands if necessary to the enjoyment of his property, using gates on the way, provided they are not so numerous and so constructed as to constitute an unreasonable burden on the use of the way.

Before GAGE, J., York, June, 1905. Affirmed.

Action by D. A. A. Watson against Henry L. Hoke. The following is the Circuit decree:

"This is an action to abate a nuisance, and to further enjoin its commission. The wrong complained of, is the erection by defendant of gates across a way owned by plaintiff over defendant's lands. The referee found against the plaintiff, and the case comes on to be heard upon two exceptions by the plaintiff.

"The exceptions raise practically one issue, of mixed law and fact; and that is, did the defendant have the legal right to at all obstruct plaintiff's way across defendant's land. The land over which the way lies was conveyed by plaintiff to defendant on 8 December, 1892, and it lies betwixt plaintiff's two tracts of land. When the deed was made, this clause was written into it: 'With the reservation of the right of way over said tract of land which I am to have on both sides of Allison's Creek down to my land which adjoins said tract of land.' Thereafter the parties made definite that which the deed did not; they located the way upon the ground, worked it and erected bridges along it. All the parties ever expressly agreed to about the way was written into the deed, and has been recited. There was no fence across the way when the deed was made, and none when the location was made; and, therefore, there were no bars or gates there. The way is a private one; and there is no pretense

it is aught else. The case would not be altered if plaintiff had never owned the servient estate, and defendant had granted to him an easement across the defendant's land. In that event, would the law forever prohibit defendant to fence his land; for a gate implies a fence? For there was no agreement between the parties, and the law must determine that which they have left uncertain.

"In my judgment, section 1338 of the Code of Laws has no reference to a case like this. It embodies the act of 1855. The object of that act was to confer on the owner of the servient estate, by direct grant of the legislature, a right the courts had held he might acquire by prescription. It had reference to neighborhood roads, because the penalty was by indictment. *State* vs. *Pettis,* 7 Rich., 390; *State* vs. *Jeffcoat,* 11 Rich., 529. A 'right of way' means what those words imply; it does not mean a way always open; it does not mean a way without any obstruction; words have not been used to express that idea. The right reserved, is to pass and repass; and in the absence of express language, that means to pass and repass in a reasonable manner.

"The testimony does not show that the gates constitute an unreasonable obstruction; it should do so to establish the plaintiff's case. The testimony leads me to believe this controversy arose out of a controversy about bridges on the way. Unfortunately for themselves, and for society, these neighbors got wrong with one another; so that acts which might have been regarded as lawful, came to be regarded as trespasses.

"I can put my hand on no controlling authority in this State to sustain my view of defendant's right to erect the gates. Mr. Washburn states the law thus: 'As a general proposition the owner of a servient estate, over which there is a private way, may maintain gates or bars across the way, provided it do not materially interfere with the use of it; or the way, by the terms of the grant, is to be kept open.' 2 Wash. Real Prop., 337, 4th ed. An Indiana case thus lays down the rule: 'It is the rule established by the authorities,

that where one grants a right of way across his land, he may shut the termini of the same by gates, unless an open way is expressly granted.' *Boyd* vs. *Bloom, 52* N. E. Rep., 751.

"When the parties laid out the way over an unobstructed field, the inference is not exclusive, that they impliedly agreed that it should always remain an unenclosed field. The defendant had just purchased the land, and the inference might well be drawn that he intended to use it in the same way land owners do use their own lands, consistent also with the rights of others upon and over it. Each party ought to have the reasonable use of his own, in the absence of a plain agreement to the contrary.

"In my judgment, the report of the referee should be affirmed; and it is so ordered."

From this decree, the plaintiff appeals.

*Mr. Geo. W. S. Hart,* for appellant, cites: *Defendant had no right to. erect gates:* 66 L. R. A., 745; 12 Johns, 223; 5 Pick., 485; 11 Gray, 427. *Code of* 1902, 1338, *does not apply:* 7 Ex., 369; 3 Yates, 421; 24 N. J. L., 486.

*Messrs. Finley & Jennings,* contra. *Mr. Jennings* cites: *A gate is not an obstruction:* 3 McC., 174; 7 Rich., 390; 6 Rich., 298; 1 McM., 174.

February 27, 1906. The opinion of the Court was delivered by

MR JUSTICE WOODS. The sole question in this case is whether the defendant should be required to remove gates erected across plaintiff's right of way over defendant's pasture land and be enjoined from again erecting them. The facts are set out in the decree of the Circuit Judge, and this Court is fully satisfied with his reasoning and the conclusion that the erection of the gates was necessary for the reasonable enjoyment by defendant of his land over which the way passes, and that they do not constitute an unreasonable interference with plaintiff's right of way. Whether the

owner of land over which a right of way runs has a right to erect gates across it depends upon the circumstances. The owner of the servient estate in farm land does not lose the right to enclose his land for agricultural purposes by reason of taking it subject to a private right of way, nor is it his duty to run a fence on both sides for the entire length of the way as laid out. He may enclose his land, using gates, provided they are necessary for the enjoyment of his property, and are not so numerous and of such size and construction as to constitute an unreasonable burden on the right of way. This is not only manifestly the reasonable view, but it is supported by many authorities, among which we may mention the following in addition to those cited in the Circuit decree: *Whaley* v. *Jarrett*, 34 N. W., 727 (Wis.) ; *Short* v. *Devine*, 15 N. E., 148 (Mass.) ; *Green* v. *Goff*, 39 N. E., 975 (Ill.) ; *Bakeman* v. *Talbot*, 38 Am. Decis., 279 (N. Y.), and note at page 281; Jones on Easements, sec. 409. While the precise question was not involved or decided, very strong language to the same effect is used by Judge Nott, in *Capers* v. *Wilson*, 3 McC., 170.

To require the defendant to throw his pasture lands open would deprive him of their use, and to require him to fence the right of way on either side would entail a most unreasonable burden upon him. On the other hand, the erection of two gates, which are well constructed, does not materially affect plaintiff's enjoyment of his right of way.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.