0565

A. C. THOMAS, Jr., Appellant, v. Kathryn Vereen MITCHELL and Deborah G. Vereen, Respondents.

(336 S. E. (2d) 154)

Court of Appeals

*Howell V. Bellamy, Jr.,* and *Henrietta U. Golding* of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers,* Myrtle Beach, *for appellant.*

*Larry B. Hyman, Jr.,* Conway, *for respondents.*

Heard Sept. 23, 1985.

Decided Oct. 23, 1985.

CURETON, Judge:

This is an action for injunction. The sole question presented is whether the respondents Kathyrn Vereen Mitchell and Deborah G. Vereen should be required to remove a locked cable erected across an easement owned by the appellant A. C. Thomas, Jr., which crosses their agricultural lands. The action was referred to the master-in-equity who determined that the servient estate could burden the dominant estate with the gate. We affirm.

In 1974 Thomas purchased 53.30 acres of land from Eu-

gene Vereen, father of the respondents. The tract was separated from the public road by other lands owned by Vereen. In the same deed, Vereen granted to Thomas "a Fifty (50) foot easement for an access road from the western boundary of the ... property conveyed to State Road 377 ..." Thomas then constructed a hunting and fishing lodge and a road within the easement from the terminus of the public road to his property. When Thomas dammed a stream on his property to create a pond, he began to encounter trespassers on his property. In an attempt to remedy the problem, he obtained permission from Vereen to place a cable across the easement near its entrance to the public road. The cable was locked by Thomas and keys given to the Vereen family. The parties disagree about how long the cable remained in place. The Vereens claimed it remained for three to four years, while Thomas claimed he removed the cable much earlier and placed it on his own property where it adjoins the end of the easement.

Before his death in 1980, Eugene Vereen deeded the servient tract to his daughters, the respondents herein. In 1982 the daughters erected another cable across the easement near the cable's initial location, locked it and gave Thomas a key to the lock. The daughters testified it was necessary to re-erect the cable because their property was plagued by trespassers, night hunters and vandals who drove vehicles over their planted fields.

At first Thomas voiced no objection to the cable, but when winter came he grew tired of having to unlock two gates (the Vereens' and his own) before he could enter upon his property. The lock mysteriously disappeared. The daughters then purchased a new lock and offered Thomas a key, but he refused to accept it. Soon thereafter Thomas commenced this action to enjoin the Vereen daughters from obstructing the easement. The cable has remained unlocked ever since. Thomas contends the cable is not necessary for the Vereens' use of their property.

In an appeal of an equitable action tried before a master authorized to enter final judgment, this Court must review the entire record and make its own findings of fact according to its view of the preponderance of the evidence. *Brown v. Gaskins,* 284 S. C. 30, 34-35, 324 S. E. (2d)

639, 641 (Ct. App. 1984). This requirement does not, however, command us to ignore the findings of the trial judge who heard the witnesses. Here, the trial judge was required to make decisions relative to the veracity and credibility of witnesses. Such decisions can best be made by the trial judge who heard the witnesses and observed their demeanor. *Klutts Resort Realty v. Down'round Development Corp.*, 268 S. C. 80, 232 S. E. (2d) 20 (1977).

Thomas first argues that the case of *Owens v. Cantrell*, 219 S. C. 433, 65 S. E. (2d) 773 (1951) supports the proposition that a gate may not be erected by the owner of a servient estate to prevent the passage of people. This argument is misplaced. As stated in *Brown v. Gaskins*, "A careful reading of *Owens* reveals the Court held only that two statutes relied upon by the servient owner to justify erection of a gate had application to the construction of gates to prevent the passage of animals, not people." 284 S. C. at 34, 324 S. E. (2d) at 641.

The case primarily relied upon by all parties is *Watson v. Hoke*, 73 S. C. 361, 53 S. E. 537 (1906). There the Court held that the owner of a servient estate may place gates across an easement so long as the gates are "necessary for the enjoyment of his property, and are not so numerous and of such size and construction as to constitute an unreasonable burden on the right of way." 73 S. C. at 364, 53 S. E. at 538. *See also Brown v. Gaskins*, 284 S. C. at 33, 324 S. E. (2d) at 640.

In addition to the question of the right of the owner of the servient estate to erect a gate, this case presents also the question of whether he may also lock the gate. The *Watson* and *Brown* cases did not deal with locked gates. There is a split of authority among the jurisdictions whether a locked gate constitutes an unreasonable burden to the owner of the dominant estate. *Hall v. Clayton*, 270 Ark. 626, 606 S. W. (2d) 102 (Ark. App. 1980) (a locked gate placed an undue burden on use and enjoyment of easement since the gate alone would serve to notify the public that roadway was private); *Nopolous v. McCullough*, 95 Ill. App. (3d) 852, 51 Ill. Dec. 320, 420 N. E. (2d) 734 (1981) (even though the owner of the servient estate offered to furnish the owner of the easement with keys, since the owner of the dominant estate used the lands for crops and not for cattle, there existed no necessity

for a gate); *Kanizer v. White*, 444 N. E. (2d) 353 (Ind. App. 1983) (where gate existed across a right of way at time of conveyance, the gate could be maintained but not locked); *Parker v. T & C Development Corp.*, 281 Md. 704, 381 A. (2d) 679 (1978) (need to protect against thieves and vandals justified placing locked gates across easement); *Stucchi v. Colonna*, 9 Mass. 851, 400 N. E. (2d) 1272 (Ct. App. 1980) (a locked gate permitted when required for insurance purposes).

Whether the owner of land over which a right of way runs is justified in erecting a locked gate across it depends upon the circumstances. *Messer v. Leveson*, 259 N.Y.S. (2d) 662, 23 A. D. (2d) 834 (1965). No hard and fast rule may be prescribed. Each case must be controlled, in large measure, by the particular facts and circumstances of the case. *Chesson v. Jordan*, 224 N. C. 289, 29 S. E. (2d) 906 (1944). We agree with the trial judge that the locked cable is necessary for the Vereen daughters' efficient use of their land and does not impose an unreasonable burden upon Thomas' use of the easement. Thomas does not reside on his property and has found it necessary to maintain a locked gate at the entrance to his property along the easement to thwart trespassers. Manifestly, a trespasser must pass through the Vereens' property to get to his property.

*Watson* applied a balancing test to determine the reasonableness of placing a gate across an easement. As the court reasoned in *Watson*, "To require the [owner of the servient estate] ... to fence the right of way on either side would entail a most unreasonable burden upon him. On the other hand, the erection of two gates, which are well constructed, does not materially affect plaintiff's enjoyment of his right of way." 73 S. C. at 364, 53 S. E. at 538. Application of the test to the facts of this case convinces us that only minimal inconvenience will be suffered by Thomas' having to unlock and open one more gate before entering his property. On the other hand, the gate serves to protect the Vereens' property from trespassers and vandals. The fact that Thomas once erected a cable near the location of the contested cable also supports the reasonableness of placing the cable across the easement. We also note that the trial judge preserved for Thomas the right to apply to the court for relief if circumstances should change.

Thomas also argues that the trial court erred in its conclusion that Thomas "should be estopped from denying [the Vereens'] right to protect their property." Although we do not interpret the order to rest upon estoppel, we need not consider this argument because our holding as above stated disposes of the merits of the case. Accordingly, the order of the master is

Affirmed.

SHAW and BELL, JJ., concur.